MAYER BROWN LLP
RUTH ZADIKANY (SBN 260288)
*rzadikany@mayerbrown.com*
C. MITCHELL HENDY (SBN 282036)
*mhendy@mayerbrown.com*
333 South Grand Avenue, 47th Floor
Los Angeles, California 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Attorneys for Defendants
DAVEY TREE SURGERY COMPANY and
THE DAVEY TREE EXPERT COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| DANTE BRUMSEY, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>DAVEY TREE SURGERY COMPANY, a Corporation; THE DAVEY TREE EXPERT COMPANY, a Corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No. 5:26-cv-1443<br><br>**NOTICE OF REMOVAL BY DEFENDANTS DAVEY TREE SURGERY COMPANY AND THE DAVEY TREE EXPERT COMPANY**<br><br>Removed from the Superior Court for the County of Santa Cruz<br><br>State Case No. 26CV00093<br><br>Trial Date: None<br>Action Filed: January 9, 2026 |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF DANTE BRUMSEY, AND HIS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Davey Tree Surgery Company ("Davey Surgery") and The Davey Tree Expert Company ("Davey Expert") (jointly, the "Defendants"), through their undersigned counsel, hereby remove the above-captioned action from the Superior Court of California for the County of Santa Cruz to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1331, 1332(d), 1441(a), and 1446. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1332(d), which respectively grant federal district courts jurisdiction over civil actions arising under the laws of the United States and over putative class actions with more than 100 class members where the aggregate amount in controversy exceeds $5 million (exclusive of interests and costs), and at least one class member is a citizen of a state different from that of any defendant. As set forth below, this action satisfies both section 1331 and each of the requirements of Section 1332(d)(2) for original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").

## BACKGROUND

1.      Plaintiff Dante Brumsey ("Plaintiff") was employed by Davey Surgery from approximately August of 2014 to July 8, 2025. Compl. ¶ 6; Declaration of Anna C. Davis In Support of Defendants' Notice of Removal ("Davis Decl."), ¶ 2.

2.      During all times relevant to this action, while employed by Davey Surgery, Plaintiff was a member of and represented by a labor organization, Local Union 1245 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union"), and his employment was governed by collective bargaining agreements that were in effect between Davey Surgery and the Union. More specifically, Davey Surgery and the Union entered into a CBA that applies to work performed by covered employees (as defined in Section 1:1), including Plaintiff, from January 1, 2020 through May 31, 2022 (the "2020 CBA"), and then again from June 1, 2022 through September 30, 2027 (the "2022 CBA"). True and correct copies of the 2020 and 2022 CBAs are attached as Exhibits 1 and 2 to the accompanying Davis Declaration. *See* Davis Decl., Exs. 1 & 2. The 2020 and 2022

CBAs addressed covered employees' wages, hours, and working conditions, and contain provisions specifically addressing work hours, breaks, sick leave, business expenses, overtime scheduling and pay. *See Id.*, Exs. 1 & 2, §§ 3:1, 3:3, 3:8, 5:1, 8:4, 14:2, 22:2, 22:3.

3. During all relevant periods, from January 2022 until his termination in July 2025, Plaintiff held the job title of Climber 4, which corresponds to the classification of Journeyman Tree Trimmer under the 2020 and 2022 CBAs. *Id.* ¶ 5.

4. On January 9, 2026, Plaintiff filed a complaint in the Superior Court of California for the County of Santa Cruz, entitled *Dante Brumsey, an individual, on behalf of himself, and on behalf of all persons similarly situated v. Davey Tree Surgery Company, a Corporation; The Davey Tree Expert Company, a Corporation; and Does 1 through 50, inclusive*, Case No. 26CV00093 ("Complaint").

5. The Complaint asserts nine causes of action against Defendants for: (1) unfair competition in violation of California Business and Professions Code § 17200; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide required meal periods; (5) failure to provide required rest periods; (6) failure to provide accurate itemized wage statements; (7) failure to reimburse required business expenses; (8) failure to provide wages when due upon termination of employment; and (9) failure to pay sick pay wages.

6. On January 20, 2026, Defendants were served by personal service with a copy of the Complaint, Summons, Civil Case Cover Sheet, Case Management Information and Setting, and Alternative Dispute Resolution Information Packet. A true and correct copy of the packet received by the Defendants is attached hereto as **Exhibit A**.

7. Defendants have not filed or received any other pleadings or papers, other than the pleadings attached as Exhibit A, in this action prior to this Notice of Removal.

8. As set forth below, this Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332(d), and this action may therefore be removed to this Court pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446. Specifically, this Court has jurisdiction over this action under 28 U.S.C. § 1331 because a federal question exists under § 301 of the Labor Management Relations Act ("LMRA"); 29 U.S.C. § 185(a) (hereafter, "Section 301"). To the

extent any claims in the Complaint are not preempted under Section 301, the entire action is removable under 28 U.S.C. § 1441(c), as this Court has supplemental jurisdiction under 28 U.S.C. § 1367, because all claims in the Complaint arise out of or are sufficiently related to form part of the same case or controversy.

9. Furthermore, this Court has jurisdiction over this entire action under CAFA, 28 U.S.C. § 1332(d), because it is a putative class action with more than 100 class members and an aggregate amount-in-controversy that exceeds $5 million, with at least one member of the putative class of plaintiffs being a citizen of a state different from at least one Defendant.

10. In accordance with 28 U.S.C. § 1446(d), Defendants will promptly serve this notice of removal on Plaintiff's counsel and file a copy with the clerk of the Superior Court for Santa Cruz County.

## REMOVAL IS TIMELY

11. "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(b)(1).

12. This Notice of Removal is timely because it is filed within 30 days of service of the Complaint and Summons on counsel for Defendants, on January 20, 2026. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint"). Thirty (30) days from the service of the Complaint and Summons on Defendants on January 20, 2026, is February 19, 2026.

## VENUE IS PROPER

13. Under 28 U.S.C. §§ 84 and 1441(a), venue is proper in the United States District Court for the Northern District of California because this Court embraces the Superior Court for Santa Cruz County, where this action was initially filed.

## THIS COURT HAS JURISDICTION UNDER 28 U.S.C. § 1331

## (FEDERAL QUESTION)

14.     Federal courts have original jurisdiction over cases founded on a claim or right "arising under the Constitution, laws, or treaties of the United States," regardless of citizenship or diversity. 28 U.S.C. §§ 1331, 1441(c). When federal question cases are brought in state court, a defendant may remove them to the federal district court embracing the place where the state court action is pending. 28 U.S.C. § 1441(a).

15.     A cause of action exists under federal law for purposes of original jurisdiction and removal if the plaintiff's "well-pleaded complaint" presents a federal issue. *See, e.g., Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9-10 (1983). Although the "well-pleaded complaint rule" generally allows a plaintiff to avoid federal jurisdiction by relying exclusively on state law, there is a well-recognized corollary to that rule: the complete preemption doctrine. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 386-87 (1987). "Under the complete preemption doctrine, the preemptive force of a federal statute converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint." *Ayala v. Destination Shuttle Servs. LLC*, 2013 WL 12092284, at *2 (C.D. Cal., Nov. 1, 2013).

16.     Section 301 of the LMRA, 29 U.S.C. § 185, is a federal statute that can have complete preemptive force. Section 301 grants federal district courts original jurisdiction over claims for violation of contracts between an employer and a union, regardless of the citizenship of the parties. 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees … may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.").

17.     In the specific context of preemption under § 301 of the LMRA, the Ninth Circuit has recognized that preemption "has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)); *Shanley v. Tracy Logistics LLC*, 756

F. Supp. 3d 820, 828 (E.D. Cal. 2024) ("Preemption by the LMRA may arise in cases where a plaintiff files a complaint asserting state law claims, but his employment was governed by a collective bargaining agreement.").

18.     Accordingly, even where, as here, a plaintiff alleges only state law claims, a federal question exists – and removal is proper – where the plaintiff's state law claims are based on the terms of a CBA or where resolution of those claims depends on analysis of the terms of a CBA. *See, e.g., Associated Builders & Contractors v. Local 302 IBEW*, 109 F.3d 1353, 1356 (9th Cir.), *as amended on denial of reh'g and reh'g en banc*, 1997 WL 236296 (9th Cir. 1997); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997, 999 (9th Cir. 1987) ("The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state claim whose outcome depends on analysis of the terms of the agreement[.]" (internal citation omitted)). In such cases, "complete preemption" overrides the "well-pleaded complaint rule" and the state law claims are treated as claims "arising under" federal law for jurisdictional purposes. *See Holman v. Laulo–Rowe Agency*, 994 F. 2d 666, 668 (9th Cir. 1993). Put another way, a civil complaint that raises claims preempted by Section 301 raises a federal question that can be removed to a federal court. *See Metro. Life Ins.*, 481 U.S. at 65; *see also Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-62 (1968) (recognizing that Section 301 is a federal statute with complete preemptive force); *Cramer v. Consol. Freightways, Inc*., 255 F.3d 683, 691 (9th Cir. 2001) (a suit that involves an employer's alleged failure to comport with its contractually established duties pursuant to a CBA is preempted).

19.     As articulated in *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007), and as refined in *Curtis*, 913 F.3d at 1152, the Ninth Circuit applies a two-step test to determine whether a claim is preempted under Section 301.

        a.  ***Curtis* Step One.** Under the Section 301 preemption analysis, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA." *Curtis*, 913 F.3d at 1152 (quotation marks and citation omitted). Under *Curtis*, where an asserted Labor Code or Wage Order claim is covered by an available collective bargaining exemption—such that

- 5 -

there exists no valid underlying state law claim—the inquiry is resolved at this first step in favor of preemption.

b. ***Curtis* Step Two.** If there is no Section 301 preemption found at the first step, courts proceed to the second step of the analysis, which asks "whether a plaintiff's state law right is substantially dependent on analysis of the CBA." *Id.* at 1153 (citation omitted). Under this second step, where there is no applicable collective bargaining agreement exemption, preemption still applies if the resolution of a claim requires interpretation of the collective bargaining agreement.

20.     It is immaterial to the preemption analysis whether Plaintiff's Complaint mentions the CBAs. *See id.* at 1152; *Radcliff v. S.D. Gas & Elec. Co.*, 519 F. Supp. 3d 743, 750 (S.D. Cal. 2021). The Court should accordingly disregard Plaintiff's (erroneous and conclusory) allegation that he and other putative class members "were not subject to a valid collective bargaining agreement that would preclude the causes of action contained herein this Complaint." Compl. ¶ 82.

21.     In this action, evaluation of Plaintiff's state law claims is inextricably intertwined with consideration of the terms of the relevant CBAs. Therefore, Defendants may remove this action pursuant to 28 U.S.C. § 1441(a) because this action, at least in part, arises under the LMRA and federal law. Plaintiff pleads nine causes of action, all of which involve wage-and-hour provisions of the California Labor Code, IWC Wage Orders, and Unfair Competition Law ("UCL"). The majority of Plaintiff's non-derivative claims, namely his overtime, meal break, rest break, and sick pay claims, are preempted under Section 301 because such claims are necessarily contractual claims under the CBAs applicable to his employment. California state law is preempted with respect to such claims because of express CBA exemptions in the Labor Code or applicable Wage Order. Plaintiff's derivative claims (for wage statement penalties under Labor Code Section 226 and waiting time penalties under Labor Code Sections 201-203) are preempted under Section 301 because such claims rise or fall based on the underlying substantive (and preempted) overtime, meal break, rest break, and/or sick pay claims. *Giles v. Canus Corp.*, 2022 WL 3370793, at *6-7 (N.D. Cal. Aug. 16, 2022). Plaintiff's minimum wage claim is preempted by Section 301 because

- 6 -

the minimum wage claim is based on the same alleged facts as the overtime claim. In the alternative, the Court has supplemental jurisdiction over these claims, which form part of the same case or controversy as Plaintiff's preempted claims.

**Plaintiff's Third Cause of Action (Unpaid Overtime)**

**Is Preempted Under *Curtis* Step One.**

22.     Plaintiff's Third Cause of Action alleges that Defendants failed to pay Plaintiff and the class members overtime wages in violation of Labor Code Section 510. Compl. ¶¶ 75-88. However, Plaintiff has no independent state law overtime claim because the CBA exemptions under Labor Code Sections 510 and 514 apply.

23.     Section 510(a)(2) provides that "[t]he requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to . . . [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514." During his employment with Defendants, Plaintiff at times worked an alternative workweek schedule in accordance with the applicable CBAs. Davis Decl., ¶ 6.

24.     Section 514 also provides an overtime exemption where an employee is "covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." In furtherance of the Legislature's explicit goal of protecting the collective bargaining system, the Section 514 overtime exemption has been construed and applied capaciously by state and federal courts. *See Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109 (2014); *Curtis*, 913 F.3d at 1154-55.

25.     Here, the applicable CBAs satisfy all of the requirements of Sections 510 and 514. *First*, the CBAs provide for a range of wages, hours and working conditions. The CBAs establish a basic workweek of five (5) workdays of eight (8) hours each, Monday through Friday, with regular hours from 7:00 a.m. to 3:30 p.m. Davis Decl., Exs. 1 & 2, § 3:1. The CBAs also establish detailed wage rates for various classifications. *Id.*, Exs. 1 & 2, App'x A. *Second*, the CBAs provide premium wage rates for all overtime hours worked. Section 3:3 of the CBAs provides that all work

- 7 -

performed outside of the regular scheduled working hours and on Saturdays, Sundays, and holidays shall be paid for at double (2x) the regular straight-time rate of pay. *Third*, the CBAs provide regular hourly rates of pay of not less than 30 percent more than the state minimum wage. The wage schedules in Appendix A of the CBAs establish hourly rates for all classifications that significantly exceed 130% of the applicable state minimum wage. For example, as of June 1, 2022, the Journeyman Tree Trimmer rate (which corresponds to Plaintiff's job classification during the relevant period) was $39.26 per hour, which exceeds the $15.00 California minimum wage then in effect by more than 30%. Similarly, as of June 1, 2025, the rate for Journeyman Tree Trimmer was $44.05 per hour, which exceeds the $16.50 California minimum wage rate then in effect by more than 30%. *See* Davis Decl., Ex. 2, App'x A. Indeed, even the lowest wage rate for covered employees (*i.e.*, Ground person Start) exceeds 130% of California's applicable minimum wage throughout the period. *Id.*

26.    Where, as here, the exemptions under Labor Code Sections 510(a) and 514 apply to a union-represented plaintiff, the "right to overtime 'exists solely as a result of the CBA,' and therefore is preempted under § 301." *Curtis*, 913 F.3d at 1154 (citation omitted); *Giles*, 2022 WL 3370793, at *4.

### **Plaintiff's Second Cause of Action (Unpaid Minimum Wages)**

### **Is Preempted Under *Curtis* Step One.**

27.    Plaintiff's Second Cause of Action alleges failure to pay minimum wages under Labor Code Sections 1194, 1197 and 1197.1. Compl. ¶¶ 62-74. Plaintiff alleges that Defendants required Plaintiff and class members to work without paying them for all the time they are under Defendants' control. *Id.*

28.    The pleaded facts in support of Plaintiff's minimum wage claim are substantially the same as those underlying his overtime claim—both are premised on alleged unpaid time worked. Because Plaintiff's overtime claim is preempted (as discussed above), so, too, is his factually related minimum wage claim. *See Chavez v. Smurfit Kappa N. Am. LLC*, 2018 WL 8642837, at *4 (C.D. Cal. Oct. 17, 2018); *Thieroff v. Marine Spill Response Corp.*, 2022 WL 2965393, at *4 (C.D. Cal. Jun. 6, 2022) (holding "to the extent [minimum wage] claim is derivative

of the overtime claim or is otherwise covered by the CBAs, it is preempted[.]").

29.     In addition, Plaintiff's Second Cause of Action is preempted under *Curtis* Step Two because the CBAs contain provisions regarding reporting time, assembly points, and pay for time worked. Section 3:2 of the CBAs provides that employees shall report to work at pre-determined assembly points and shall return thereto at the conclusion of the day's work, and the time spent in traveling between such assembly points and the job site "shall be considered as time worked." Courts have consistently held that minimum wage claims are preempted when the CBA contains such provisions regarding pay for time worked. *See Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, at *5 (N.D. Cal. Jan. 18, 2022); *Giles*, 2022 WL 3370793, at *6.

**Plaintiff's Fourth Cause of Action (Meal Period Violations)**

**Is Preempted Under *Curtis* Step One.**

30.     Plaintiff's Fourth Cause of Action alleges the failure to provide meal periods under California law, specifically Labor Code Sections 226.7 and 512. Compl. ¶¶ 89-92. However, Plaintiff has no state-law meal period claim because the Labor Code Section 512(e) exemption applies.

31.     As is relevant here, the Section 512(e) exemption applies because Plaintiff: (i) was employed in a construction occupation performing line clearance tree trimming work, *see e.g., Lopez v. W. Coast Arborists, Inc.*, 2024 WL 382368, at *3 (E.D. Cal. Feb 1, 2024); and (ii) was covered by CBAs that (a) expressly provide for a range of wages, hours and working conditions, (b) expressly provide for meal periods, including a thirty (30) minute unpaid lunch period and additional meal periods for overtime work, *see* Davis Decl., Exs. 1 & 2, §§ 3:1, 3:8, 5:1, (c) provide final and binding arbitration of disputes concerning all provisions of the CBAs (including the meal period provisions), *see id.*, §§ 15:1-15:6, (d) provide premium wage rates for all overtime hours worked, *see id.* § 3:3, and (e) provide regular hourly rates of pay of not less than 30% more than the state minimum wage, *see id.*, App'x A.

32.     The meal break CBA exemption in Labor Code Section 512(e) has been construed broadly by the courts with an eye toward the Legislature's goal of protecting the collective bargaining process. *See Araquistain v. Pac. Gas & Electric Co.*, 229 Cal. App. 4th 227, 230, 237-

38 (2014). Where the Section 512(e) exemption is met, the state law provision "*as a whole*" does not apply. *Id.* at 236.

33.     Further, where, as here, the Section 512(e) exemption applies, a pleaded state law meal period violation claim is preempted by Section 301. *See Rodriguez*, 2022 WL 161892, at *4; *Giles*, 2022 WL 3370793, at *4-5; *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1098 (N.D. Cal. 2014).

### Plaintiff's Fifth Cause of Action (Rest Period Violations)

### Is Preempted Under *Curtis* Step One.

34.     Plaintiff's Fifth Cause of Action alleges failure to provide rest periods under California law, specifically under Labor Code Sections 226.7 and 512 and the applicable IWC Wage Order. Compl. ¶¶ 93-96. However, Plaintiff's rest period claim is preempted by Section 301 because an applicable CBA exemption applies.

35.     In the applicable Wage Order, Wage Order 16, there is an applicable rest break CBA exemption at Section 11.D. The Section 11(D) CBA exemption reads as follows: "In cases where a valid collective bargaining agreement provides final and binding mechanism for resolving disputes regarding enforcement of the rest period provisions, the collective bargaining agreement will prevail." Cal. Code Regs., Title 8, Section 11160(11)(D).

36.     Here, the CBAs, at Section 15:6, expressly provide a final and binding arbitration mechanism for the resolution of disputes regarding rights arising under the CBAs. The Arbitrator shall hear the evidence and render his decision in writing, which shall be final and binding upon both parties. Thus, the CBAs satisfy the requirements of the rest break CBA exemption. *See Thieroff*, 2022 WL 2965393, at *5; *Zayerz v. Kiewit Infrastructure W.*, 2018 WL 582318, at *4-5 (C.D. Cal. Jan. 18, 2018).

### Plaintiff's Ninth Cause of Action (Underpaid Sick Pay Wages)

### Is Preempted Under *Curtis* Step One.

37.     Plaintiff's Ninth Cause of Action alleges that Defendants failed to pay sick pay wages at the correct regular rate of pay under Labor Code Sections 201-203, 233, and 246, claiming that Defendants paid sick pay at the base rate rather than including non-discretionary incentive

- 10 -

compensation in the calculation. Compl. ¶¶ 112-117.

38.     The Labor Code contains applicable CBA exemptions in Labor Code Sections 245.5(a)(1) and (a)(2). If either Section 245.5(a) exemption applies, then Plaintiff's paid sick leave law claim is preempted under Section 301. *Brumble v. Andrew M. Jordan, Inc.*, 2023 WL 4053418, at *2-3 (N.D. Cal. June 16, 2023).

39.     Here, Plaintiff's Ninth Cause of Action is preempted because the CBA exemption is met. The 2022-2027 CBA, at Section 22:3, contains an express waiver of California's paid sick leave requirements: "Both parties to this Agreement hereby agree to waive the requirements of the existing statute, ordinance, rule, law or regulation including, but not limited to, Article 1.5 (commencing with Section 245[]) and all local ordinances, including, but not limited to those cities of Berkley, Emeryville, Oakland, and San Francisco. Any employer who is signatory to this Agreement shall not be required to comply with said statute, ordinance, rule, law or regulation, and any employee covered by this Agreement shall not have any right or cause of action against any signatory employer or IBEW Local 1245 for violation of said statute, ordinance, rule, law or regulation." Davis Decl., Ex. B, § 22:3.

40.     This clear and unambiguous waiver satisfies the requirements of the Labor Code Section 245.5(a)(2) exemption, which applies when a valid CBA "expressly waives the requirements of this article in clear and unambiguous terms." Because the CBAs contain this express waiver, Plaintiff's sick pay claim under Labor Code Section 246 is preempted under Section 301.

**Plaintiff's Derivative Claims For Wage Statement Penalties, Waiting Time Penalties, and UCL Violations (Sixth, Eighth, and First Causes of Action) Are Preempted Under *Curtis* Step One.**

41.     Plaintiff's Sixth Cause of Action (wage statement penalties under Labor Code Section 226), Eighth Cause of Action (waiting time penalties under Labor Code Sections 201-203), and First Cause of Action (restitution under UCL) are all, in whole or in part, derivative of Plaintiff's claims that are preempted under Section 301 for the reasons described above.

42.     All three derivative claims are preempted under Section 301 for this reason. *Giles*,

- 11 -

2022 WL 3370793, at *6-7; *Rodriguez*, 2022 WL 161892, at *6; *Mellon v. Universal City Studios, LLC*, 2022 WL 4021692, at *5 (C.D. Cal. Sep. 2, 2022); *Jimenez v. Young's Mkt. Co.*, 2021 WL 5999082, at *13 (N.D. Cal. Dec. 20, 2021); *Vasquez v. Packaging Corp. of Am.*, 2019 WL 4543106, at *4 (C.D. Cal. Jun. 7, 2019).

43.    Notably, Plaintiff's Sixth and Eighth Causes of Action would be preempted under Section 301 in any event, under Step Two of the *Curtis* analysis, because such claims require the interpretation and application of detailed provisions regarding the timely payment of wages to both current and departing employees in Section 8:4 of the CBAs. *See Curtis*, 913 F.3d at 1153.

**The Court Has Supplemental Jurisdiction Over Any Of Plaintiff's**

**Claims That The Court Finds Are Not Preempted.**

44.    If this Court finds that any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy. *See Giles*, 2022 WL 3370793, at *6; *Jimenez*, 2021 WL 5999082, at *21; *Paulk v. Student Transp. Of Am., Inc.*, 2024 WL 3291591, at *4 (C.D. Cal. Jul. 3, 2024).

**THIS COURT HAS JURISDICTION UNDER CAFA**

45.    This action meets CAFA's definition of a class action, which is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Plaintiff purports to bring this class action under California Code of Civil Procedure § 382 and identifies one putative class and one putative subclass. Compl. ¶¶ 28–46.

46.    ***The proposed class exceeds 100 members***. Plaintiff seeks to represent a California class defined as "all individuals who are or previously were employed by Davey Tree Surgery Company and/or The Davey Tree Expert Company in California, including any employees staffed with Davey Tree Surgery and/or The Davey Tree Expert Company by a third party, and classified as non-exempt employees . . . at any time during the period beginning four (4) years prior to the

- 12 -

filing of this Complaint and ending on the date as determined by the Court." Compl. ¶ 28.

47. Based on Defendants' records, during the four-year period preceding the filing of the Complaint (January 20, 2022 to present), Defendants employed more than 100 individuals as non-exempt employees in California. *See generally infra*. The aggregate proposed class is therefore at least 100 members as required under CAFA. 28 U.S.C. § 1332(d)(5)(B).

48. ***The Parties are minimally diverse***. CAFA permits removal if the parties are minimally diverse; that is, if the citizenship of at least one putative class member differs from the citizenship of at least one named defendant. 28 U.S.C. § 1332(d)(2)(A).

49. The Complaint does not allege Plaintiff's citizenship, but instead alleges that Plaintiff "was employed by DEFENDANT in California from August of 2014 to July 8, 2025. Compl. ¶ 6. Defendants are informed and believe, and on that basis allege, that Plaintiff is a citizen of California, which is the state in which he resides and the state in which he worked for Defendants as alleged in the Complaint. *See id.*; *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227–28 (9th Cir. 2019).

50. Unlike Plaintiff, Defendant Davey Expert is not a citizen of California. For purposes of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). Davey Expert is an Ohio corporation with its principal place of business in Kent, Ohio. This can be confirmed on the California Secretary of State's Business Entities Search website (https://bizfileonline.sos.ca.gov/search/business), which shows that Davey Expert is a corporation formed in Ohio with its principal place of business at 1500 N. Mantua St., Kent, Ohio 44240. Attached as Exhibit B is a true and correct copy of a Statement of Information that Davey Expert filed with the California Secretary of State on or about July 22, 2025, attesting to its Ohio citizenship.

51. As Plaintiff is a citizen of California, which is a state different from the citizenship of Defendant Davey Expert, there is minimal diversity under 28 U.S.C. § 1332(d)(2)(A). (In light of Davey Expert's Ohio citizenship, it is immaterial under § 1332(d)(2) that the other named Defendant, Davey Surgery, is a Delaware corporation with its principal place of business in

- 13 -

California.)

52.    The residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (Doe defendants need not join in removal). Thus, the existence of Does 1 through 50, inclusive, does not deprive this Court of jurisdiction.

53.    In the event this Court's jurisdiction is challenged either by Plaintiff or by the Court *sua sponte*, Defendants reserve the right to request jurisdictional discovery and/or to amend or supplement its removal submissions to present additional information regarding the Parties' states of citizenship.

54.    ***The amount in controversy exceeds $5 million.*** CAFA requires that the amount in controversy exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, determining if the amount in controversy exceeds $5 million requires aggregating the claims of the putative class members. 28 U.S.C. § 1332(d)(2), (d)(6); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). The amount in controversy "is determined from the pleadings as they exist at the time a petition for removal is filed." *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 545 (9th Cir. 1985).

55.    Defendants allege based on the following calculations and the allegations in the Complaint that the amount in controversy exceeds $5,000,000 for purposes of establishing subject matter jurisdiction under CAFA. These calculations and allegations are not admissions of liability or damages with respect to any aspect of the case, admissions regarding the proper legal standards applicable to Plaintiff's allegations, or admissions regarding whether a class action is proper.

56.    Plaintiff's Complaint does not allege the amount in controversy for the class and subclass he purports to represent.[1] Where a complaint does not allege a specific amount in damages,

---

[1] While the Complaint at times baldly alleges that the aggregate amount in controversy for the putative California Class and putative California Labor Sub-class is under $5 million, *see, e.g.,* Compl. ¶¶ 7, 28, 38, such assertions are not entitled to any presumption of truth or accuracy. *See Franklin v. Home Depot U.S.A., Inc.*, 2025 WL 1983036, at *5 (N.D. Cal. July 17, 2025) (rejecting

- 14 -

the "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." (citation omitted)). The amount in controversy is "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Furthermore, there is no presumption against removal under CAFA. *See Dart Cherokee*, 574 U.S. at 89.

57.     It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs., LLC*, 2007 WL 1302504, at *3 (E.D. Cal. May 1, 2007) (emphasis omitted). In addition, as explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins.*, 372 F.3d 1115, 1117 (9th Cir. 2004). The Court may consider facts presented by the defendant in the removal petition relevant to determining the amount in controversy at the time of removal. *Id.* "[T]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what defendant will *actually* owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 1199, 1205 (E.D. Cal. 2008).

58.     In addition, Defendants may rely on "reasonable assumptions" in calculating the amount in controversy for removal purposes. *Arias*, 936 F.3d at 922. "Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met." *Korn*, 536 F. Supp. 2d at 1205; *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd.*, 631 F.3d 1010 (9th Cir. 2011).

---

similar argument made by Plaintiff's same counsel here). Instead, Defendants are "entitled to assert a calculated amount in controversy for purposes of CAFA removal in the Notice of Removal[.]" *Id.*

59.     Plaintiff brings this action on behalf of himself and a putative class defined as: "all individuals who are or previously were employed by Davey Tree Surgery Company and/or The Davey Tree Expert Company in California, including any employees staffed with Davey Tree Surgery Company and/or The Davey Tree Expert Company by a third party, and classified as non-exempt employees (the "CALIFORNIA CLASS") at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court (the "CALIFORNIA CLASS PERIOD"). Compl. ¶ 28.

60.     Plaintiff also seeks to represent a "California Labor Sub-Class," which the Complaint "defined as [sic] Davey Tree Surgery Company and/or The Davey Tree Expert Company in California, including any employees staffed with Davey Tree Surgery Company and/or The Davey Tree Expert Company by a third party, and classified as non-exempt employees (the "CALIFORNIA LABOR SUB-CLASS") at any time during the period three (3) years prior to the filing of the complaint and ending on the date as determined by the Court (the "CALIFORNIA LABOR SUB-CLASS PERIOD") pursuant to Cal. Code of Civ. Proc. § 382." Compl. ¶ 38.

61.     Among other forms of relief, Plaintiff and the putative class members ("PCMs") seek to recover "restitutionary disgorgement," compensatory damages for unpaid overtime and minimum wages, wage statement penalties, premiums for non-compliant meal and rest periods, liquidated damages, "the amount of the expenses [Plaintiff] and each [PCM in the putative California Labor Sub-Class] incurred in the course of their job duties," statutory penalties, waiting time penalties, attorneys' fees, and pre-judgment interest. *See* Compl., Prayer for Relief, ¶¶ 1-3.

62.     Defendants have preformed a preliminary analysis of their payroll records and employment data with respect to the PCMs to determine the CAFA amount in controversy for purposes of this Notice of Removal. That data included information regarding the dates of employment, hours worked and hourly rates paid to Defendants' former and current employees in California who were classified as non-exempt or hourly employees between January 9, 2022, and January 26, 2026 (the date that data was compiled for purposes of this Notice of Removal). Without prejudice to their rights to amend and/or supplement these removal submissions in the event these allegations are challenged, Defendants summarizes that data as follows:

- 16 -

63. There are at least 549 PCMs who separated their employment during the three-year period preceding the filing of the Complaint (between January 9, 2023, and present);

64. Among those 549 PCMs who separated their employment during the three-year period preceding the filing of the Complaint, their average hourly rate of pay was $34.49 per hour at the time of separation;

65. PCMs worked an aggregate of at least 783,128 workdays for Defendants during the four-year period preceding the filing of the Complaint;

66. PCMs worked an aggregate of at least 774,260 workdays for Defendants during the four-year period preceding the filing of the Complaint that were at least 5 hours in length;

67. During that four-year period, PCMs worked an average of approximately 9.34 hours per workday;[2] and

68. PCMs have an average hourly rate of $36.48 per hour (based on current hourly rate or last effective rate at the time of separation);

69. As set forth below, a conservative estimate of the alleged amount in controversy implicated by the class-wide allegations exceeds $5 million. This estimate is based on a preliminary analysis of Defendants' records. All calculations supporting the amount in controversy are based on the Complaint's allegations, without any admission of the truth of the facts alleged and assuming, solely for purposes of this Notice of Removal, that liability is established.

**Waiting Time Penalties (Eighth Cause of Action).**

70. The Complaint's Eighth Cause of Action seeks penalties under Labor Code § 203 for failure to timely pay wages due at termination. Compl. ¶¶ 105-111. Plaintiff's Complaint alleges that Defendants failed to timely pay wages due upon termination of employment, in violation of Labor Code §§ 201-203. Specifically, Plaintiff alleges that Defendants have "not tendered payment of all wages owed as required by law" to the terminated PCMs, and that Defendants "underpaid accrued vested vacation wages" to terminated PCMs. Compl. ¶ 110. Plaintiff's Complaint "demands thirty days of pay as penalty for not paying all wages due at time of termination for all

---

[2] As provided under the CBAs and as discussed above, many of Defendants' California employees work alternative work schedules consisting of four ten-hour shifts per workweek.

employees who terminated employment during the CALIFORNIA LABOR SUB-CLASS PERIOD." *Id.* ¶ 111.

71.     Based on Plaintiff's express allegations and demands in paragraphs 110 and 111 of the Complaint, Defendants reasonably assume for purposes of removal that all putative class members who were terminated may be entitled to 30 days' waiting time penalties under Labor Code § 203. *See Monarrez v. Centerra Grp., LLC*, 2021 WL 5105587, at *7 (C.D. Cal. Nov. 3, 2021) (approving use of "maximum penalties" in materially similar complaint); *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *8 (C.D. Cal. Dec. 3, 2019) (finding "reasonable" defendant's assumption that "putative class members did not receive final wages for the full 30-day period under which penalties may accrue"); *Tajonar v. Echosphere, LLC*, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant employer's assumption that each employee was entitled to the maximum 30-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations.").

72.     Using a three year limitations period applicable to claims for waiting time penalties under Labor Code § 203(b), there were at least 549 PCMs who separated from Defendants from January 9, 2022 to January 26, 2026. Those PCMs had an average hourly rate of approximately $34.49 per hour. As described above, PCMs worked an average of 9.34 hours per shift. For purposes of this removal notice, however, Defendants will conservatively assume that terminated PCMs worked an average of only 8 hours per day.

73.     Accordingly, Defendants conservatively estimate that the amount in controversy for Plaintiff's waiting time penalties is *at least* **$4,544,402.40** [$34.49 average hourly rate x 8 hours worked per day x 30 days x 549 separated PCMs].

**Failure to Provide Meal Periods (Fourth Cause of Action).**

74.     The Complaint's Fourth Cause of Action seeks compensation for Defendants' alleged failure to provide Plaintiff and putative class members with meal periods as required by California Labor Code § 512. The Complaint alleges that "[d]uring the CALIFORNIA CLASS PERIOD, DEFENDANT from time to time failed to provide all the legally required off-duty meal

- 18 -

breaks to PLAINTIFF and the other CALIFORNIA LABOR SUB-CLASS Members as required by the applicable Wage Order and Labor Code." Compl. ¶ 90; *see also id.* ¶ 91 (alleging PCMs "who were not provided a meal period, in accordance with the applicable Wage Order, [were not paid] one additional hour of compensation at each employee's regular rate of pay for each workday that a meal period was not provided").

75.    Based on the foregoing allegations, Plaintiff seeks to recover for himself and the PCMs "[m]eal and rest period compensation pursuant to Cal. Lab. Code §§ 226.7, 512 and the applicable IWC Wage Order[.]" Prayer for Relief ¶ 2(D).

76.    As addressed above, PCMs worked at least 774,260 workdays during that period that were at least five hours in length.

77.    In assessing material identical allegations of meal break violations brought by Plaintiff's counsel, courts have held that removing defendants can reasonably assume a 20% violation rate for purposes of alleging the amount in controversy. *See Burgos v. Citibank, N.A.*, 2023 WL 5532123, at *4-5 (N.D. Cal. Aug. 28, 2023) (holding 20% violation rate reasonable under materially identical allegations).

78.    Thus Defendants here adopt a reasonable (but conservative) assumption of a 20% violation rate (i.e., one missed meal break per week). As PCMs worked an approximate aggregate of 774,260 workdays during the four-year limitations period, and the PCMs have an average hourly rate of $36.48 per hour, Defendants provide a conservative estimate for the amount in controversy on Plaintiff's unpaid meal break claims as follows:

| Average Hourly Wage | | Number of Workdays With 5+ Hours | | 20% Assumed Violation Rate | | Amount in Controversy |
|---|---|---|---|---|---|---|
| **$36.48** | x | 774,260 | x | .20 | = | **$5,649,001** |

79.    Accordingly, the amount in controversy on Plaintiff's meal break claim is *at least* **$5,649,001.**

80.     Plaintiff seeks attorneys' fees. Compl., Prayer for Relief ¶ 3(C). Attorneys' fees are properly included in the amount in controversy here as California Labor Code §§ 218.5 and California Code of Civil Procedure § 1021.5, under which Plaintiff seeks to recover, permit the award of attorneys' fees. Compl., Prayer for Relief, ¶3; *see Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *Olson v. Michaels Stores, Inc.*, 2017 WL 3317811, at *5 (C.D. Cal. Aug. 2, 2017) ("Plaintiff's *pro rata* share of attorneys' fees may be considered to calculate the amount in controversy.").

81.     While there is no bright line rule that the amount of attorneys' fees in controversy is 25% of all other alleged recovery, *Fritsch v. Swift Transp. Co. of Ariz. LLC,* 899 F.3d 785, 796 (9th Cir. 2018), courts routinely accept 25% as a reasonable benchmark of attorneys' fees for calculating the amount in controversy. *See, e.g., Olson*, 2017 WL 3317811, at *5 (using a 25% benchmark fee award to calculate Plaintiff's pro rata share of attorneys' fees.); *Vieyara-Flores v. Sika Corp.*, 2019 WL 2436998, at *5 (C.D. Cal. June 10, 2019) (Applying a 25% benchmark to the amount in controversy to calculate attorneys' fees.); *see also Coffin v. Magellan HRSC, Inc.*, 2020 WL 773255, at *6 (S.D. Cal. Feb. 18, 2020) ("Courts may exercise their discretion to choose between the lodestar and percentage method in calculating fees."). Accordingly, including attorneys' fees of 25% of the amount in controversy is reasonable for estimating the total amount in controversy.

82.     Based on the calculations set forth above for Plaintiff's Fourth and Eighth Causes of Action alone, and the 25% benchmark for attorneys' fees, Defendants calculate the amount of reasonable attorneys' fees in controversy to be no less than **$2,548,350** [$10,193,403 x 25%].

83.     Accordingly, Defendants allege that the amount in controversy in Plaintiff's Complaint is no less than **$12,741,754**, which exceeds the $5,000,000 threshold required to establish this Court's jurisdiction under CAFA.

84.     Defendants expressly reserve and do not waive their right to amend this Notice of

Removal and/or offer evidence supporting the Court's jurisdiction over this action under CAFA or otherwise, including without limitation as to additional and/or different amounts in controversy, and as to traditional diversity and/or federal question jurisdiction. Additionally, Defendants assume that the proposed class and subclass are as defined by Plaintiff in the Complaint for purposes of this Notice of Removal only, but expressly reserve and do not waive their position that the proposed class definition is improper and/or cannot be certified.

85. ***No CAFA exception applies.*** CAFA contains a number of exceptions to its grant of original jurisdiction, but none applies here. 28 U.S.C. §§ 1332(d)(3)-(5). Based on the allegations in the Complaint, Defendants Davey Expert and Davey Surgery are both "primary defendants" for purposes of §§ 1332(d)(3) and (4). As explained above, Davey Expert is not a citizen of California. Furthermore, during the three-year period preceding the filing of Plaintiff's Complaint, another class action was filed in California asserting the same or similar factual allegations against Davey Surgery on behalf of the same or other persons. *See Ernesto Daniel Contreras v. Davey Tree Surgery Company*, No. 23CV027491 (Superior Court for the State of California, County of Alameda ) (complaint filed February 8, 2023).

## CONCLUSION

86. Because the amount in controversy exceeds $5,000,000, the parties are minimally diverse, and the proposed class exceeds 100 members, CAFA confers this Court with subject matter jurisdiction. 28 U.S.C. § 1332(d).

87. Additionally, this Court has subject matter jurisdiction under 28 U.S.C. § 1331, as the Complaint presents federal questions under Section 301 of the LMRA, and this Court has supplemental jurisdiction over any remaining, non-preempted claims under 28 U.S.C. § 1367.

88. If any questions arise about the propriety of this removal, Defendants request an opportunity to submit briefing, additional evidence and to present oral argument in support of removal before an order resolves the question. *See Dart Cherokee Basin Operating Co.*, 574 U.S. at 88; *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020).

89. Nothing about this Notice of Removal waives (or should be construed to waive) any right, argument or objection available to Defendants. Defendants reserve all defenses.

90.     Defendants also respectfully reserve the right to amend or supplement this notice.

Dated: February 19, 2026

MAYER BROWN LLP

By: */s/ Ruth Zadikany*
    Ruth Zadikany
    C. Mitchell Hendy

Attorneys for Defendants
DAVEY TREE SURGERY COMPANY and
THE DAVEY TREE EXPERT COMPANY